UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF MICHIGAN

In re:

WILLIAM LEE DARIN,

        Debtor.

_____/

PNC EQUIPMENT FINANCE, LLC,

        Plaintiff,

v.

WILLIAM LEE DARIN,

        Defendant.

_____/

Case No. DG 18-03279
Hon. Scott W. Dales
Chapter 7

Adversary Pro. No. 19-80051

In re:

JOSEPH P. LOPEZ,

        Debtor.

_____/

PNC EQUIPMENT FINANCE, LLC,

        Plaintiff,

v.

JOSEPH P. LOPEZ,

        Defendant.

_____/

Case No. DG 18-03292
Hon. Scott W. Dales
Chapter 7

Adversary Pro. No. 19-80049

MEMORANDUM OF DECISION AND ORDER

PRESENT:   HONORABLE SCOTT W. DALES
                Chief United States Bankruptcy Judge

## I. INTRODUCTION

In an order dated April 21, 2021, the court denied the summary judgment motion of Plaintiff PNC Equipment Finance, LLC ("PNCEF") and notified the parties pursuant to Fed. R. Civ. P. 56(f)[1] that it was considering whether to grant the summary judgment motions of Defendants William Lee Darin and Joseph P. Lopez for reasons in addition to, but slightly different from, those set forth in the Defendants' papers. *See, generally,* Transcript of Hearing Held April 21, 2021 (ECF No. 73, hereinafter "Tr.") at 48:3 *et seq.* In response to that order, the parties filed supplemental papers addressing the issues the court raised under Rule 56(f). *See* ECF Nos. 66, 67, and 74).[2]  The court has reviewed the summary judgment record, and for the following reasons will grant the Defendants' motions, deconsolidate the adversary proceedings, and dismiss each case.

## II. JURISDICTION

All parties have agreed, and the court concludes, that it may exercise the jurisdiction bestowed under 28 U.S.C. § 1334, and that this matter is a "core proceeding" within the meaning of 28 U.S.C. § 157(b)(2)(I).  Despite the Plaintiff's reliance on Michigan's fraudulent conveyance law, the sole theory of the action is to determine the dischargeability of the Defendants' debts to the Plaintiff under § 523(a)(2)(A).[3]

---

[1] The court will refer to any Federal Rule of Bankruptcy Procedure or Federal Rule of Civil Procedure simply as "Rule ___," relying on the numbering convention for each set of rules to signal the intended reference.  In addition, unless otherwise indicated, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532.

[2] In the Pretrial Order dated August 25, 2020, the court administratively consolidated PNCEF's adversary proceedings against each defendant under Adv. Pro. No. 19-80049 given the overlapping allegations and issues.  In this opinion, citations to ECF document numbers refer to Adv. Pro. No. 19-80049.

[3] PNCEF did not assert grounds for excepting any debt from discharge other than § 523(a)(2)(A) and fraudulent conveyance law, abjuring any reliance on § 523(a)(4) or (a)(6), as its counsel confirmed during oral argument. *See* Tr. at 18:1-15 and 26:12-21.

III. ANALYSIS

A. <u>Background</u>

For context, before Messrs. Darin and Lopez independently filed separate petitions for relief under chapter 7, they owned and operated multiple Denny's franchise restaurants through their company known as JDJ Hospitality, LLC ("JDJ").  JDJ itself filed for relief under the Bankruptcy Code, but the court dismissed that case in favor of a state court receivership.  PNCEF, through assignment predating the present dispute and pending cases, became JDJ's lender and the beneficiary of the guarantees that Messrs. Darin and Lopez signed to support JDJ's debt.  PNCEF does not contend in this adversary proceeding that JDJ or Messrs. Darin and Lopez duped it (or its predecessor) into making the loan to JDJ in the first place; rather, the lender contends that Messrs. Darin and Lopez caused JDJ to effect transfers of PNCEF's collateral to themselves and to another entity, Banana Split Properties, LLC ("BSP"), for their benefit, with actual intent to defraud PNCEF by compromising its ability to collect from JDJ.  PNCEF's theory of claim draws heavily on *Husky Int'l Electronics v. Ritz*, 136 S. Ct. 1581 (2016), the Michigan Uniform Fraudulent Transfer Act ("MUFTA") and the current version of the statute, the Michigan Uniform Voidable Transactions Act ("MUVTA").[4]

In the order dated April 21, 2021, in addition to giving notice under Rule 56(f), the court took the Defendants' identical motions for summary judgment under advisement.  Together, these motions express frustration about having to defend against the allegations

---

[4] *See* M.C.L. § 566.31 *et seq*.  The definitions within MUFTA and MUVTA do not differ materially insofar as today's decision is concerned.  For convenience the court will refer to MUVTA -- the more recent iteration of Michigan's fraudulent conveyance statute.

that the Defendants caused various transfers to occur, without the benefit of precise identification by the Plaintiff of the specific transfers.

Keeping in mind that the Plaintiff bears the ultimate burden of proof at trial, the court may enter summary judgment for the Defendants only if it finds there is no genuine issue of material fact and the Defendants are entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a).  The court must evaluate every motion on its own merits and view all facts and inferences in the light most favorable to the nonmoving party, here PNCEF.  *Taft Broadcasting Co. v. United States*, 929 F.2d 240, 248 (6th Cir. 1991).  A defendant may use the summary judgment procedure to put a plaintiff to its proofs in an effort to see whether there is any point in proceeding to trial or whether the court should instead resolve the dispute against the plaintiff, as a matter of law, because the plaintiff has failed to support an element or elements of its case.

B. Defendants' Arguments Rejected

1. Dispute About PNCEF's "New" Claim

The court rejects a number of the Defendants' arguments in support of dismissal. For example, from the start of this proceeding the Defendants have challenged PNCEF's basic premise that it has a debt "obtained by" fraud because each Defendant owes a debt to PNCEF under a guaranty untainted by any allegation of fraud at the inception of the relationship.  PNCEF counters by arguing that under MUVTA, the Defendants' role in the allegedly fraudulent transfer of JDJ's assets subjects them to a new debt, independent of their guaranty liability.

PNCEF cites *McClellan v. Cantrell*, 217 F.3d 890, 895 (7th Cir. 2000), as authority for its view that the transfer of property with actual intent to hinder, delay or defraud creditors creates a new debt. The Sixth Circuit's Bankruptcy Appellate Panel in *Conley v. Smith (In re Smith)*, 2008 WL 5411078, No. 08–8021 (B.A.P. 6th Cir. Dec. 30, 2008), cited *McClellan* approvingly to suggest that a fraudulent transfer may give rise to a debt separate from a creditor's original claim. The notion is not as far-fetched and unworkable as Messrs. Darin and Lopez suggest in their motion papers, considering that MUVTA itself authorizes recovery from a transferee or "the person for whose benefit the transfer was made." M.C.L. § 566.38(a) and (b). Here, under PNCEF's theory, Messrs. Darin and Lopez are both transferees (with respect to funds flowing directly from JDJ to its owners) and persons allegedly benefiting from the transfers to BSP (their jointly-owned company). This gives rise to a colorable "new" claim against the Defendants, separate from the claim under the original loan transaction. The court notes that the plaintiff in *Husky Int'l* came to bankruptcy court with a cause of action under a Texas statute imposing liability separate from the original indebtedness so, closely read, the Supreme Court has not abandoned the requirement that the debt to be excepted from discharge under § 523(a)(2)(A) be one "obtained by" false pretenses or actual fraud.

The court rejects the Defendants' argument that PNCEF cannot show a "new debt" separate from their guaranty liability.

2. Challenge to PNCEF's Standing

Nor is the court persuaded by the Defendants' argument that PNCEF lacks standing and that recognizing its theory of claim would unreasonably multiply claims against them

by giving every creditor the same right to recover for the same transfers. The standing argument would have some force if JDJ's bankruptcy case were still pending, because in that case, the Bankruptcy Code preemptively vests the trustee with the standing to avoid and recover fraudulent transfers for the benefit of the estate (and its creditors). As Judge James D. Gregg wrote long ago, "[a] substantial body of case law stands for the proposition that commencement of bankruptcy stays any state court fraudulent conveyance actions involving a debtor or his transferees." *Matter of Fletcher*, 176 B.R. 445, 452 (Bankr. W.D. Mich. 1995), *rev'd on other grounds sub nom. In re Van Orden,* No. 1:95-CV-79, 1995 WL 17903731 (W.D. Mich. Sept. 5, 1995); *see also Grand Rapids E Cigarette, LLC v. Mitten Pizza, LLC (In re Ahlan Indus., Inc.)*, Slip Op. Adv. No. 20-80136, at p. 14 (Bankr. W.D. Mich. May 25, 2021) (citing *CH Holding Co. v. Miller Parking Co.*, 973 F.Supp.2d 733, 737-38 (E.D. Mich. 2013)); *In re Spiech Farms, LLC*, 603 B.R. 395, 403 (Bankr. W.D. Mich. 2019) ("a trustee has the exclusive right to assert causes of action that arise under the Bankruptcy Code, including chapter 5 avoidance actions"). The court, however, dismissed JDJ's case several years ago and there is no suggestion that JDJ's receiver has preemptive powers akin to a bankruptcy trustee's strong-arm powers under chapter 5.

Related to their standing argument, the Defendants' contend that recognizing PNCEF's theory of claim would unreasonably multiply their liability under MUVTA by the number of creditors who might elect to proceed under the statute. The court rejects this argument, too. MUVTA itself has safeguards to prevent this presumed unfairness by capping each creditor's recovery at the amount of its respective claim,[5] and by

---

[5] M.C.L. § 566.37(1)(a) (authorizing avoidance only "to the extent necessary to satisfy the creditor's claim").

incorporating principles of equity and other (non-MUVTA) law as appropriate.[6]  Certainly

principles of equity would prevent an unreasonable multiplication of debt.   Under

applicable non-bankruptcy law, including MUVTA, a creditor in a proper case may sue

transferees of its debtor and recover the property transferred or its value, capped at the

amount of the creditor's claim against its debtor.

The court perceives no unmanageable risk of multiplying the Defendants' liability

simply from recognizing PNCEF's theory of claim.

C. Defendants' Arguments Accepted

Two of the Defendants' main arguments, however, find favor with the court, and

warrant an order granting their summary judgment motion.

Through this proceeding Defendants have consistently asserted that PNCEF has

failed to specifically identify which transfers support its supposed MUVTA claim, most

recently in their summary judgment papers.[7]  The court rejected this assertion in denying

the Defendants' motion to dismiss in the early days of this dispute, a decision the District

Court declined to disturb through interlocutory appeal, reasoning, as this court did, that the

better approach was to permit the parties to develop "the factual record necessary for each

side to make its case, whether on summary judgment or at trial, as to whether the elements

---

[6] M.C.L. § 566.42 ("the principles of law and equity, including the law merchant and the law relating to principal and agent, estoppel, laches, fraud, misrepresentation, duress, coercion, mistake, insolvency, or other validating or invalidating cause, supplement the provisions of this act").

[7] *See, e.g.*, Defendants' Brief in Support of Their Response to PNC's Motion for Summary Judgment (ECF No. 59) at p. 3 ("in tracing the injury to the challenged actions of Defendants, Plaintiff must state with specificity of [sic] each transfer of which it complains. Plaintiff's complaint is void of any factual specificity as to the dates of the transfers, the specific amounts of the transfer, and the transferee.").

of non-dischargeability have been established." *See* Order Denying Leave for Interlocutory Appeal (ECF No. 34) at p. 2.

At the current stage of the proceedings, however, discovery has concluded and PNCEF has had the opportunity to precisely articulate its allegation, and bolster the allegations with specific evidence, in support of its case against the Defendants. Unquestionably, it must do so in response to the Defendants' motion, which properly puts the Plaintiff to its proofs, as Plaintiff's counsel succinctly observed with respect to the Defendants' position during oral argument, in terms equally applicable to its own. *See* Tr. at 9:18-20 ("You know, this is a moment, as they say, the put-up or shut-up moment in a case at summary judgment.").

Despite the Defendants' citation to Rule 9's particularity requirement and critique of PNCEF's vagueness in identifying specific transfers in support of its case, PNCEF responded to the Defendants' criticism of its allegations simply by referring Defendants (and the court) to the JDJ general ledger account entries. Aggregating its injury, PNCEF contends it has been damaged by the Defendants' actual fraud in directing the transfers, in the total amount of $260,573.25. The summary judgment papers, however, provide scant assistance to the court in identifying specifically the property transferred, other than by reference to JDJ's general ledger accounts and various tax returns. The general ledger accounts, which the Defendants are certainly familiar with given their role in managing JDJ's affairs, identify numerous "draws" in favor of each defendant and transactions involving BSP, but the court has struggled in vain to identify precisely which transfers PNCEF is challenging.

Plaintiff's argument as to BSP, for example, appears to depend not on specific transfers but instead on the growing debt of BSP to JDJ over time, based on reviews of tax returns year-to-year. *See* Tr. at 22:24-23:4. This approach to alleging actually fraudulent transfers, however, is the same one the Eastern District of Michigan rightly condemned in *Gold v. Winget (In re NM Holding Cos., LLC)*, 407 B.R. 232, 261 (Bankr. E.D. Mich. 2009), and cases cited therein. As Judge Tucker observed, quoting the Southern District of New York's bankruptcy court, "[a]llegations that a debtor made an aggregate amount or series of cash or other transfers over a period of time, without further particularization, are insufficient to state an intentional fraudulent transfer claim." *Id*. (quoting *Official Comm. of Unsecured Creditors of M. Fabrikant & Sons, Inc. v. JP Morgan Chase Bank, N.A. (In re M. Fabrikant & Sons, Inc.)*, 394 B.R. 721, 733, 734 (Bankr. S.D.N.Y. 2008)).

If PNCEF had expected to prevail at trial it should have been prepared to respond to the Defendants' continuing and foreseeable specificity challenge in response to the summary judgment motions and not expect the court to assume by general reference to general ledgers the burden of proving its case. "Nothing in either the Rules or case law supports an argument that the trial court must conduct its own probing investigation of the record," *Guarino v. Brookfield Twp. Trustees*, 980 F.2d 399, 405 (6th Cir. 1992), and courts must rely on the parties who are more familiar with the record:

> It is the attorneys, not the judges, who have interviewed the witnesses and handled the physical exhibits; it is the attorneys, not the judges, who have been present at the depositions; and it is the attorneys, not the judges, who have a professional and financial stake in case outcome. Thus, the free-ranging search for supporting facts is a task for which attorneys in the case are equipped and for which courts generally are not.

*Id*. at 406; *see also* Fed. R. Civ. P. 56(c)(3).  From the inception of this proceeding the Defendants have complained about the lack of specificity in the Plaintiff's allegations, and they strike this same chord again in their summary judgment motions.  It was incumbent on the Plaintiff to precisely identify the transfers by date, amount, transferee, and other details (including the specific deposit accounts from which the transfers emanated) to persuade the court to rule in its favor.  At this stage of the proceedings, after sufficient discovery and notice of the need to allege specific transfers, Plaintiff's failure to specifically identify the transfers at issue dooms its response to the Defendants' motions.

With respect to the Plaintiff's obligation to establish a *prima facie* case under MUVTA, including the existence of an "asset" within the meaning of the statute, the Plaintiff's response is similarly deficient.  As noted above, PNCEF's contention throughout this proceeding[8] that it held a perfected, first priority, blanket security interest in all of JDJ's personal property at the time of the transfers prompted the court to inquire during the hearing whether, under the circumstances, PNCEF (as the self-declared holder of a perfected blanket lien) can have a claim under MUVTA (or its predecessor) as a matter of law.  The court's question is premised on the policy of any fraudulent conveyance statute, namely that creditors may avoid transfers that had an adverse impact on the debtor's estate.  If a debtor's property is fully-encumbered, a transfer of that fully-encumbered property

---

[8] From the beginning of these cases, PNCEF has asserted that it has a security interest in all personal property of JDJ, by assignment, and that its security interest was perfected.  *See* Amended Complaint (ECF No. 7) at ¶¶ 12, 15, 16, 19, 21, 22.  The Defendants note in their supplemental filing the Plaintiff's unflagging consistency, until its last filing, of touting its first priority, perfected security interest in all of JDJ's assets, including cash collateral.  *See, e.g.*, Declaration of David Kennedy (ECF No. 57) at ¶¶ 14, 17; *see generally* Defendant's Supplemental Brief Per Court Order of April 21, 2021 (ECF No. 67) (listing instances of asserted perfection).  The court, however, agrees with Plaintiff's counsel that his client's statements in the JDJ bankruptcy case were made as of the petition date, not the date of the supposed transfers.  The court therefore discounts the Defendants' overreliance on those earlier statements.  PNCEF's statements throughout the adversary proceedings, however, are fair game.

does not harm creditors because (1) the secured creditor's rights in the collateral already give that creditor access to the transferred property; and (2) unsecured creditors would not benefit from the avoidance of a transfer or recovery of encumbered property, because such property is earmarked for the secured party under general commercial law.

MUVTA carries this policy into effect principally through its definitions of "asset," "transfer," and "valid lien."  A creditor's main remedy under MUVTA is avoidance of a "transfer," a term that "means every mode, direct or indirect, absolute or conditional, voluntary or involuntary, of disposing of or parting with an *asset* or an interest in an *asset*." M.C.L. § 566.31(q) (emphasis added).  The statute defines "asset" as "the property of a debtor," but significantly excludes from the definition "[p]roperty to the extent it is encumbered by a *valid lien*." *Id.* § 566.31(b) (emphasis added).  Under that same section, a "'[v]alid lien' means a lien that is effective against the holder of a judicial lien subsequently obtained by legal or equitable process or proceedings." *Id.* § 566.31(r).  This section imports the priority rules from non-MUVTA law,[9] including Article 9 of the Uniform Commercial Code.[10]  So, as the syllogism goes, if the property at issue is not an asset because it is subject to a valid lien, a creditor has no remedy (and no claim) under MUVTA.

Reacting to PNCEF's uncontested statements in its brief and throughout this proceeding that it had fully encumbered JDJ's assets with perfected security interests, and the Defendants' argument that as a secured creditor PNCEF could have protected itself from any allegedly improper transfer, the court issued its Rule 56(f) notice to determine whether it might grant the Defendants' motion for reasons slightly different from those they

---

[9] *See* M.C.L. § 566.42 (Principles of law and equity as supplemental provisions of act).
[10] *See* M.C.L. § 440.9317(b) (lien creditor takes priority over holder of unperfected security interest).

articulated in their briefs.  Accordingly, the court permitted supplemental briefing.  *See* Tr. at 48:4-49:18.

In its supplemental brief (ECF No. 66), PNCEF argues for the first time that it did not have a perfected security interest in JDJ's deposit accounts at PNC Bank (an affiliated but separate entity) from which it alleges the Defendants caused JDJ to make the fraudulent transfers because it did not have "control" over the accounts.  Given the nature of deposit accounts, a secured creditor generally perfects its security interest in such property by control (at least for deposit accounts as original collateral).  *See* M.C.L. § 440.9104 (defining "control" of deposit account), § 440.9312(2) (perfection of security interest in deposit account generally available only by control), and § 440.9314 (perfection of security interest in deposit account).  PNCEF concludes that because it did not have a control agreement covering JDJ's deposit accounts it could not have a perfected security interest in them, the funds in the deposit accounts were not subject to a "valid lien," and therefore qualified as "assets" under MUVTA.  Accordingly, PNCEF argues, it may rely on MUVTA as the source of its "new claim" against the Defendants.

As the Defendants point out in their own supplemental filing, however, PNCEF's "valid lien" argument is based on a false premise, namely that the only way for a secured creditor to have a perfected security interest in a deposit account is through "control" under M.C.L. §§ 440.9104 and 440.9312(2).[11]  Section 440.9312(2) is subject to important exceptions, as shown in the italicized portion of the following excerpt:

---

[11] The court does not regard the "Authorization for Automatic Withdrawal" included as Exh. 12-A and 12-B to Defendants' Supplemental Brief Per Court Order of April 21, 2021 (ECF No. 67-12) as a "control agreement" within the meaning of M.C.L. § 440.9104 because JDJ's depository institution (PNC Bank) did not authenticate the document: the authorization document simply reflects JDJ's understanding with its lender, not its depository institution.  A control agreement is one in which the "debtor, secured party, and bank *have agreed* that the bank swil comply with instructions originated by the secured party . . . ."  M.C.L.

> (2) *Except as otherwise provided in section 9315(3) and (4) for proceeds*, a security interest in a deposit account, a letter-of-credit right, or money may be perfected only as follows:
>
> > (a) A security interest in a deposit account may be perfected only by control under section 9314.

M.C.L. § 440.9312(2) (emphasis added).  Under the first exception, "[a] security interest in proceeds is a perfected security interest if the security interest in the original collateral was perfected." *Id*. § 440.9315(3).  Under the second, in relevant part, that perfected status lasts for at least 20 days after the original collateral becomes proceeds, and longer if the "proceeds are identifiable cash proceeds." *Id*. § 440.9315(4)(b).

Therefore, PNCEF's argument that it lacks a "valid lien" in the deposit accounts because it does not benefit from a "control agreement" is not persuasive.  First, although it is clear that PNCEF is not the same entity as PNC Bank, and therefore did not perfect "by control" under M.C.L. § 440.9104(1)(a), its statement that it did not have a "control agreement" is not supported by affidavit.  In the court's experience, some sophisticated depository institutions include within their deposit agreements a provision granting control to affiliates or subsidiaries.  The court is not inferring that PNC Bank's depository agreement included such a provision (though it might have) but only that the Plaintiff who has throughout this proceeding, including in support of its own summary judgment motion,[12] asserted a perfected security interest in the property transferred ought to have marshalled some evidence to contradict its earlier positions, even assuming those assertions

---

§ 440.9104(1)(b) (emphasis added).  PNC Bank may have honored the automatic withdrawals initiated pursuant to Exh. 12 but does not appear to have been obligated to do so through a tripartite agreement such as the statute contemplates.  Also, Exh. 12 itself suggests that JDJ could rescind the authorization, albeit on pain of default.

[12] *See* Declaration of David Kennedy (ECF No. 57) at ¶¶ 14, 17.

do not amount to binding judicial admissions.  Fed. R. Civ. P. 56(c)(1) (supporting factual positions); *cf. In re Spencer*, 568 B.R. 278, 280 (Bankr. W.D. Mich. 2017) (denying stay relief motion "supported only by legal argument, which is not evidence").

Second, PNCEF does not negate the possibility, indeed the likelihood, that the funds in the deposit accounts were identifiable cash proceeds of its collateral (*e.g.*, inventory sold in the ordinary course of JDJ's restaurant business), or temporarily perfected under M.C.L. § 440.9315(3) depending on the timing of the transfers upon which its "new claim" theory depends.  Instead, PNCEF identified the transfers of concern by reference to general ledger accounts, but did not identify the deposit accounts from which JDJ allegedly made the transfers.  Plaintiff suggested during the oral argument that it need not show specific bank accounts from which the transfers were made.  Rather, Plaintiff regards it sufficient to establish only generally that transfers occurred, coincident with badges of fraud.  *See* Tr. at 22:16-23:4. Without identifying the bank accounts evidencing the transfers, however, the Plaintiff cannot show that the specific property transferred was unencumbered.  It is conceivable, for example, that the only funds on deposit in those deposit accounts represent proceeds of PNCEF's collateral, which includes not only inventory (*i.e.*, the food and beverages sold through JDJ's Denny's restaurants) but also all "rights to the payment of money . . . for services rendered or Goods sold or furnished" by JDJ.  *See* Declaration of David Kennedy (ECF No. 57) at Exh. 6 (UCC 1) and Exh. 9 (security agreement).[13]  Without drawing inferences in the Defendants' favor at this stage of the proceedings, the court nevertheless acknowledges the distinct possibility, if not the

---

[13] To the extent the deposit accounts included trust fund sales tax collections, the transfer of those funds would likely not be subject to a "valid lien" but they would also not likely qualify as an "asset" within the meaning of MUVTA because such funds are collected by JDJ as agent/trustee, and would not be considered "property of the debtor."

likelihood, that the deposit accounts of a restaurant operation would hold proceeds of the sale of inventory, including identifiable cash proceeds of PNCEF's collateral in this case. PNCEF's most recent brief argues, again without citation to the record of this adversary proceeding, that a meat supplier may have had a lien on the actual property transferred, but the court fails to see how this helps Plaintiff's case: the definition of "asset" does not differentiate between liens held by one creditor or another. And, to the extent that pointing to the possible existence of another (prior) lienor is meant to cloud the picture of whether the proceeds of collateral were identifiable, the party with the burden of proof on an issue at trial needs to do more than simply kick up some dust at the summary judgment stage. *See* Plaintiff PNC Equipment Finance, LLC's Reply in Support of Supplemental Response to Motion for Summary Judgment (ECF No. 74, "PNCEF Post-Argument Reply") at 11.

Black letter law teaches that the creditor seeking to except a debt from discharge under § 523(a)(2)(A) has the burden of proof, by a preponderance of the evidence, on every element of its claim. *Grogan v. Garner*, 498 U.S. 279, 291 (1991); *Kinsler v. Pauley (In re Pauley)*, 205 B.R. 501, 506 (Bankr. W.D. Mich. 1997). This means that PNCEF has the burden of proving that the Defendants caused a "transfer" or transfers with intent to defraud, which means, in turn, that it must identify the "asset" or assets transferred. In an opinion that PNCEF itself cited in its post-hearing briefs, the U.S. District Court for the Eastern District of Michigan framed the burden in this fashion:

> As the party alleging a fraudulent transfer cause of action, Steinberg bears the burden of proof as to every element of his claim-including proof that assets were available for transfer that were not encumbered by a valid lien. *See, e.g., In re Grove–Merritt*, 406 B.R. 778, 789 (S.D. Ohio 2009); *Lexington Oil & Gas Ltd.*, 423 B.R. 353, 2010 WL 431401 (Bankr. E.D. Okla. Jan. 27, 2010).

*Steinberg v. Young*, No. 09-11836, 2010 WL 3190849, at *6 (E.D. Mich. Aug. 11, 2010). Indeed, the statute squarely places the burden of proving an actually fraudulent transfer on the plaintiff (here PNCEF).  *See* M.C.L. § 566.34(3) ("A creditor making a claim for relief under subsection (1) has the burden of proving the elements of the claim for relief by a preponderance of the evidence.").

So, in order to establish that JDJ transferred "assets" within the meaning of the statute, PNCEF must establish that JDJ transferred its own property (not some else's) and that the property transferred was not subject to a valid lien.  The statute defines the term "asset" affirmatively (as "property of the debtor"), and negatively (as excluding property of the debtor that is subject to a "valid lien"), which certainly complicates a plaintiff's burden.  Yet, a plaintiff that has repeatedly touted in this proceeding that it held a perfected blanket lien on all relevant property cannot be surprised if the court takes the plaintiff at its word, at least in the absence of evidence to the contrary.  Even if the evidence at trial might establish that PNCEF did not benefit from a control agreement, PNCEF likely enjoyed automatic perfection of its security interest in the restaurant's deposit accounts under M.C.L. § 440.9315(3) and (4), and after discovery it should have been able to make a *prima facie* showing, in the words of the *Steinberg* court, "that assets were available for transfer that were not encumbered by a valid lien."  *Id.*  PNCEF did not make such a showing in response to the Rule 56(f) notice, but merely advanced arguments in an attempt to shift that burden to the Defendants.  *See* PNCEF Post-Argument Reply at pp. 3, 6, 11, and 12.

The court finds PNCEF's other post-hearing arguments unpersuasive.  For example, its citation to *Carpenters Southern California Administrative Corp. v. Manufacturers*

*National Bank*, 910 F.2d 1339, 1341 (6th Cir. 1990), for the notion that the status of a borrower's default affects a secured party's priority against a lien creditor, is unavailing. That case articulated the rule for a contest between a judgment creditor and a garnishee-bank, and held that a judgment creditor cannot prevail against the garnishee unless the judgment debtor could prevail against the garnishee. The opinion goes further, observing that the garnishee bank's set off rights will beat the judgment creditor even if the bank had not accelerated the judgment debtor's debt before service of the garnishment writ. Similarly unpersuasive, PNCEF's citation to *Yaddehige v. Xpert Technologies, Inc.*, 2019 WL 1746077, Slip Op. 341035 (Mich. Ct. App. April 18, 2019), stands for the proposition that a transferee of money takes free of a security interest in the money, in the absence of collusion, under M.C.L. § 440.9332, but this unpublished decision in no way undermines the MUVTA definition of "asset" which necessarily considers the transferor's estate immediately before the transfer. Such a transfer may harm the secured creditor, but does not support a claim under MUVTA. *See, supra*, p. 2, n. 3.

In this same vein, the court rejects PNCEF's argument that strictly applying the definition of "asset" in M.C.L. § 566.31(b) will render MUVTA a dead-letter in most instances, given the prevalence of "all asset" liens in commercial financing arrangements. As noted above, the policy of MUVTA comes into play only when a transfer depletes the transferor's estate. *See, supra*, at p. 10. Other policies, such as those expressed in Article 9 of the Uniform Commercial Code, which favor secured creditors over unsecured, also hold sway.

## IV. CONCLUSION AND ORDER

Notwithstanding the opportunity to respond to the Defendants' summary judgment motions and the court's Rule 56(f) notice, PNCEF has failed to make a *prima facie* case under § 523(a)(2)(A) and MUVTA warranting trial on the merits.  Accordingly, the court will grant the Defendants' motions, deconsolidate the two adversary proceedings, and direct the Clerk to enter final judgments dismissing PNCEF's case against each Defendant.

NOW, THEREFORE, IT IS HEREBY ORDERED as follows:

1.      The Defendants' summary judgment motions (ECF No. 50) are GRANTED;

2.      The Pretrial Order dated August 25, 2020 (ECF No. 40) is AMENDED for the purpose of deconsolidating Adv. Pro. Nos. 19-80049 and 19-80051, and after entry of today's Memorandum of Decision and Order all further pleadings, motions, notices, judgments, and other papers served or to be filed in connection with either adversary proceeding shall be filed in the docket of the adversary proceeding originally filed against each respective Defendant;

3.      The Clerk shall docket this Memorandum of Decision and Order in both adversary proceedings and include in each docket a conspicuous notification that the court has deconsolidated the adversary proceedings, but that both dockets should be consulted for a full understanding of the litigation; and

4.      The Clerk shall enter separate judgments dismissing each adversary proceeding in the respective dockets (Adv. Pro. Nos. 19-80049 and 19-80051).

IT IS FURTHER ORDERED that the Clerk shall serve a copy of this Memorandum of Decision and Order pursuant to Fed. R. Bankr. P. 9022 and LBR 5005-4 upon David Alexander Darcy, Esq., and Martin L. Rogalski, Esq.

**IT IS SO ORDERED.**

**Dated June 9, 2021**



Scott W. Dales
United States Bankruptcy Judge